## E. G. RICHARDSON v. BRISTOL LAND & IMPROVEMENT CO.

Eastern Section. January 9, 1926.

Certiorari denied by Supreme Court, March 24, 1926.

1. **Estoppel. Where property is improved by another knowing of owner's rights there can be no equitable estoppel because the owner does not stop him.**
Where real estate company conveyed a lot to complainant and provided that he should have an alley over other lots and the other lots were later conveyed to another who had knowledge of all the facts and improved the lots without regard to complainant's rights, complainant then having another way to use did not object, held complainant was not estopped to demand the alley and this especially where no material damage to defendant's property.

2. **Damages. No actual damages for failure to open an alley until after demand and refusal to open it.**
In an action for specific performance of a contract for an alley and to recover damages for the failure to open it held there could be no actual damages until after demand and refusal to open it.

3. **Specific performance. Decree of specific performance lies in discretion of court.**

In a suit in equity to enforce specific performance of contracts the court should use its discretion in granting the decree.

4. **Specific performance. Duty of court to grant specific performance where contract conforms to equitable principles.**

Where a contract of which equity has jurisdiction conforms with certain equitable principles, which are quite limited in number, it is as much a matter of course for a court of equity to decree specific performance as for a court of law to give damages for a breach of the contract.

5. **Deeds. Description. Description of an alley to be later opened held sufficient.**

In an action for the specific performance of a contract to open an alley described in complainant's deed, "As an outlet, an alley to Linwood Street, is to run at some point west of this lot to provide an outlet to said alley in the rear," held description was sufficiently specific and complainant entitled to have alley opened.

6. **Deeds. Wording of description held to leave actual location within limits described in deed to parties owing servient lots.**

Where deed containing clause "As an outlet, an alley to Linwood Street is to run at some point west of this lot to provide an outlet to said alley in the rear," held the exact location was left to party owning servient lots but if he failed or refused to open it then party was entitled to do so himself.

Appeal from Chancery Court, Sullivan County; Hon. H. T. Campbell, Special Chancellor.

Reversed and remanded.

St. John and Gore, of Bristol, for appellant.

Jos. A. Caldwell and Bachman and Brown, all of Bristol, for appellee.

SNODGRASS, J. This is a suit seeking specific performance of a clause contained in a deed giving appellant an outlet or driveway to Linwood Street through the adjoining property of the Bristol Land & Improvement Company and the defendants H. W. Reynolds and wife.

The bill was filed February 20, 1924, setting out that by deed of January 8, 1921, and of record February 14, 1921, in the Register's office at Bristol, Tenn., Deed Book, Vol. 35, page 328, appellant purchased of the Bristol Land & Improvement Company a certain lot fronting seventy-five feet on the north side of Linwood Street, in Bristol, Tennessee, and running back 142½ feet to an alley, which deed also contained the following clause:

"As an outlet, an alley to Linwood Street is to run at some point west of this lot to provide an outlet to said alley in the rear."

That the said Bristol Land & Improvement Company later, on June 30, 1921, by deed of record in said Register's Office, under date of October 14, 1921, Deed Book, Vol. 37, page 207, sold to

appellee, H. W. Reynolds, a lot west of and adjoining said property, fronting seventy-five feet on said Linwood Street.

The bill also charges that the said H. W. Reynolds is secretary and in charge of the business of the Bristol Land & Improvement Company, and made all the negotiations with reference to the purchase by appellant of his said lot, and that it was definitely understood that said outlet or driveway was to be fifteen feet in width.

The bill also charges that at the time of appellant's said purchase there was a driveway leading from said alley at the rear of his property across some vacant lots of the Bristol Land & Improvement Company out to Linwood Street, near the corner of Pennsylvania Avenue, and that appellant and others were accustomed to use this alley, and that appellant used this curved line, or alleyway up to the early part of September, 1923, when he was denied the use thereof by the appellees.

The bill further charges that if said alleyway or outlet conveyed to appellant in his said deed were permanently cut off, damages would be wholly inadequate, and he therefore seeks specific performance of his contract or deed.

Joint and separate answer of all three defendants, Bristol Land & Improvement Company, H. W. Reynolds and wife, W. R. Reynolds, was filed on May 19, 1924, and is sworn to by H. W. Reynolds, denying that appellant had an alleyway or outlet to Linwood Street as claimed by him; setting out that said clause in the deed is indefinite, uncertain, vague and insufficient as to the description.

Also claims equitable estoppel, charging that the appellant stood by, while said Reynolds and wife acquired property rights and constructed improvements thereon.

Denies that appellant paid any street assessment on said alleyway leading out to Linwood Street.

Denies the right of appellant to use said curved line out to Linwood Street near Pennsylvania Avenue, and sets out that the most feasible approach is over the alley coming in at the rear from Pennsylvania Avenue.

Claims an agreement between appellant and H. W. Reynolds, under which appellant was to release his claim to said alleyway or outlet leading out to Linwood Street, in consideration of defendants opening up an alley from Pennsylvania Avenue to the alley in the rear of appellant's lot.

Asks that in the event the court should hold that appellant is entitled to an alley or outlet to Linwood Street, that same be laid off along a line west of the seventy-five foot lot of the said H. W. Reynolds.

The foregoing, taken from appellant's brief, is conceded to be a fair statement of the case, except it is insisted that the bill does

not charge that there was an old curved driveway at the time complainant purchased his property, but does charge that the most feasible route is a curved drive, and that he began to use that route after he purchased the property.

Proof was taken and the cause was heard by the chancellor upon the bill, answer of defendants, proof and exhibits in the case, together with arguments and briefs of counsel, from all of which the court is of opinion that the reservation in the deed from the defendant Brisol Land & Improvement Company to the complainant "as an outlet," an alley from Linwood Street, is to run at some point west of this lot to provide an outlet to said alley in the rear, is indefinite, and specific performance will not be decreed as sought by complainant. The court finds that the controlling idea in the minds of both complainant and defendants at the time of the sale and of the execution and delivery of said deed, was that there would be provided for the complainant an outlet from the rear of his property, and that the defendants have prepared a practical and feasible outlet from Pennsylvania Avenue to said alley, which is capable of being satisfactorily used by the complainant, or can easily be made so.

That, "since the remedy of specific performances is an extraordinary remedy, the granting of which rests in the sound discretion of a court of equity, and will be refused where it will work injustice or undue hardship upon others, under all the circumstances appearing in this case the court is of opinion that this is not a proper case for the exercise of such discretion in granting specific performance."

"It is therefore ordered, adjudged and decreed by the court that complainant be and is hereby denied specific performance as sought in the bill, and that in lieu of same defendants be and are hereby required to provide a fifteen-foot alley running from Pennsylvania Avenue to the alley in the rear of complainant's property, constructed in such a manner as to be a feasible outlet from the rear of complainant's property, and in the opinion of the court meets all the equities of the case; the court finding that the location of the outlet already provided, as shown by the maps filed as exhibits in this cause, can be satisfactorily made."

The costs of the cause were adjudged against the defendants, and execution awarded.

To the action of the court in failing to decree specific performance as prayed in the bill the complainant prayed and obtained an appeal to this court, which appeal was perfected.

Appellant has assigned as error:

1. "That the court erred in refusing to enter decree for specific performance of the reservation clause in the deed to Richardson with reference to the outlet or driveway from the alley in the rear of his lot to Linwood Street in front."

2.  ''The court erred in holding that the controlling idea in the minds of the parties when the deed was made, was only an outlet for the complainant from the rear.''

3.  ''The court erred in holding that the alley as laid out now leading in from Pennsylvania Avenue and connecting with the alley at the rear of Richardson's lot at a point thirty-five feet east of his line, and thus causing him in going from his front gate to his garage to detour more than a thousand feet met with the requirements of the reservation clause in said deed.''

4.  ''The court erred in holding that whether said reservation clause was susceptible of specific performance was within his discretion.''

5.  ''The court erred in refusing to allow Richardson damages on account of defendants withholding from him the use of said outlet to Linwood Street covering the period from the date of his deed, January 8, 1921, to the time said driveway was opened.''

6.  ''The court erred in holding that the clause with reference to the alley in question is vague and indefinite.''

It will be observed that the court declined to decree the specific performance contracted and prayed for, but decreed the performance of an obligation not contracted nor prayed for.

As every one of appellant's assignments may be disposed of in a consideration of the first, they will be treated together.

Complainant Richardson's property described in his deed is a part of an original block, No. 24, comprising and descriptive of land in defendant Bristol Land & Improvement Company's addition to Bristol, Tennessee, as is also the Reynolds property, the land through which complainant Richardson claims an alley. The Bristol Land & Improvement Company originally sub-divided this property into lots 50x150 feet, fronting on Pennsylvania Avenue and Kentucky Avenue, and running back to an alley running north and south from Linwood Street at a distance of one hundred and fifty feet from Pennsylvania Avenue. This sub-division of the property was found to be impracticable, and in the first sale made in this section the Bristol Land & Improvement Company reserved the right to close Kentucky Avenue north of Linwood Street, and to front the lots on Linwood Street, and upon an alley running east and west to Pennsylvania Avenue, at a point one hundred and forty-two and one-half feet north of Linwood Street. This was done, and it seems the property thereafter insofar as it affects the land or lot in controversy in this lawsuit in said block was made to front on Linwood Street, and this accounts for a part of the description of the property deeded to the complainant as being parts of certain lots, the new lots being carved out of those certain lots as originally located in the plat.

A map showing the section involved in this cause was filed as Exhibit "C" to the deposition of T. P. Spaulding, which is referred to and made a part of this finding. The property purchased from the defendant Company is indicated on the map by the enclosure within the black lines, and denominated "Richardson Property." The alley at the rear of this property, indicated in red, running east to Pennsylvania Avenue from the place where the circular outlet denominated "Present Drive," is the alley from which the complainant claims he is entitled to an outlet under his deed to Linwood Street. The sinkhole is shown by the circular dotted line at the rear of the Richardson property, which, as is observed, includes most of the alley bounding his property on the north, extending east to about half way between complainant's property and the mouth of said driveway.

If the fifteen-foot alley is placed just west of the west line of complainant's lot, connecting the alley with Linwood Street, it would take several feet of the very valuable residence which defendant H. W. Reynolds has built on a lot purchased of his co-defendant, the Land Company, after the date and registration of complainant's deed. This trouble is indicated on the map by the purple coloring and called the "Lot Line." It might as well be explained here that the defendant H. W. Reynolds claims to own his property through the same source that defendant claims; that is, from the defendant, Bristol Land & Improvement Company. Complainant's deed is dated January 8, 1921, and was recorded February 14, 1921. Defendant Reynolds' first deed is dated June 30, 1921, and was recorded October 14, 1921. In this latter deed there is this description of the lot:

"A certain tract or parcel of land situated in Bristol, 17th Civil District of Sullivan county, Tennessee, bounded as follows: On the south by Linwood Street; on the west by alley, on the north by alley, and on the east by lot property of Ed Richardson; fronts seventy-five feet on the north side of Linwood Street, and runs back between parallel lines one hundred forty-two and one-half feet to an alley, and being part of lots Nos. 7, 8, 9, 10, 11 and 12 in Block No. 24 of the Bristol Land & Improvement Company's Fairmount Addition to Bristol, 17th District, Sullivan county, Tennessee."

Then by deed dated the 29th day of August, 1923, there was conveyed to the said defendant Reynolds by the said Bristol Land & Improvement Company the remainder of the property between that described in the first conveyance and Pennsylvania Avenue, by the following description.

. . . "Bounded as follows: Fronting one hundred and fifteen feet on Linwood Street, and running back one hundred forty-two and one-half feet with Pennsylvania Avenue to fifteen-

foot alley; bounded on the south by Linwood Street, on the west by Pennysylvania Avenue, on the north by lot 13, and on the east by the property of H. W. Reynolds.''

It will be observed that this deed includes the alley by which the deed of June 30, 1921, bounded the lot conveyed by it. This deed is acknowledged the 8th day of December, 1924, and does not appear to have been registered. This bill was filed February 20, 1924, nearly ten months before this last deed was acknowledged. The first two deeds mentioned were executed before any improvements were begun on the property. When complainant's deed was executed all the property between his lot and Pennsylvania Avenue was owned by the defendant Land Company. The topography of all this property is irregular and steep, making access to the rear from any place in front a matter of considerable expense for any practical purposes. This was apparent to all the parties concerned, notwithstanding the land or lots seems to have had considerable value as residence property. The defendant Reynolds was an officer of the defendant Land Company, knew all about the situation, and negotiated the sale of the lot in question to the complainant Richardson. He was also familiar with the fact that the complainant Richardson attached great value to an alley outlet from the alley in the rear to Linwood Street. Complainant told him that he would not consider the purchase of the lot at any price unless he had an alley leading from the alley in the rear to Linwood Street. Complainant was assured by defendant Reynolds that such alley would be left, running from complainant's alley in the rear to Linwood Street, and with this understanding, and that the alley was to be fifteen feet wide, the trade was closed at the price of $1250. Defendant Reynolds then prepared a deed and presented it to complainant to know if it was satisfactory, and after reading it over complainant noticed that it did not include the alley provision. The deed was thereupon returned to the defendant (who will hereafter be termed Dr. Reynolds), and he was told it would have to be put in. He said it was his intention to do this, but the stenographer had overlooked it. He inserted the alley clause in the deed, took it away with him, and brought it back later containing the provision, at which time the transaction was closed, and the deed accepted and registered on the date indicated, with the reference to said alley contained in this clause:

''As an outlet, an alley to Linwood Street is to run at some point west of this lot to provide an outlet to said alley in the rear.''

At the time of this deed there did not exist any entrance to the alley from its rear. That outlet indicated as ''Present Driveway'' was constructed by the defendants, or one of them, some time afterwards, and without any consultation with the complainant, or any

agreement whatever that it would operate in lieu of the alley described in complainant's deed. Serving only as an outlet or inlet to his property in the rear, it would be a detouring distance from the front of complainant's residence around by way of Linwood Street to Pennsylvania Avenue, and from this intersection to where the present driveway leaves Pennsylvania Avenue and to its intersection with said real alley of somewhere in the neighborhood of one thousand feet, crossing the sinkhole, and with other disadvantages rendering it undesirable.

At the time of the execution of complainant's deed people owning property on Linwood Street in getting to the alley on the rear of their property, no one interfering, and pursuing the line of least resistence, as is usual in such cases, had been using a curved road leading out to Linwood Street near Pennsylvania Avenue, somewhat in the proximate location of what is now claimed as the "Private Driveway" of Dr. Reynolds, and indicated on the map in yellow. However, no prescriptive right had been obtained, but this spontaneous appropriation of a course to the rear alley by these unconscious engineers is a pointer as to its being the most feasible and desirable outlet to Linwood Street; and when we add to this its practical adoption and the expensive improvement by the doctor as a private driveway to the rear, it is pretty convincing evidence of the fact that it is the most feasible.

The complainant has constructed a house worth about ten thousand dollars on his lot, which he is occupying as a home. Sometime after the purchase and before the improvement of his lot, he began to use this curved driveway in hauling in his material, etc.

Another circumstance worthy of mention is, that there had been an assessment for the improvement of Linwood Street, and in paying his proportionate part of said assessment by reason of the frontage of his lot on Linwood, Dr. Reynolds called his attention to the fifteen-foot alley, which had to bear its part of the improvement, a part of which it was insisted was chargeable to him, and the complainant paid a portion of this assessment as chargeable to him against said alley.

Dr. Reynolds also began to build his house on the lot purchased by him soon after his purchase, and erected a commodious residence of the value of some thirty thousand dollars, at the place indicated on the map hereinbefore referred to. In the building of his house, with full knowledge of the right and expectation of the complainant for a fifteen-foot alley leading from the alley in the rear and somewhere west of his property to Linwood, he constructed his house so near Mr. Richardson's west line as that an alley of that width could not be constructed along Richardson's west boundary line without taking several feet off his house, and so near the west

boundary line of his own lot as to be actually on an alley which his own deed had the effect of dedicating without determining its width. These two facts indicate the size of the house that the Doctor has constructed. The only conversation the Doctor claims to have had with the complainant about the alley after the execution of the deed to complainant was in the summer of 1924, and that was over the 'phone, and it is partly from this conversation that he claims an estoppel arises against complainant to now claim a specific performance in laying out an alley through to Linwood. As to that conversation he says:

"I was in my father's office when Mr. Richardson called him up over the telephone, and my father told him he did not know anything about it, but I was there and could talk to him. I told him I had no desire to stop up his alley, or block him in the use of his alley in the rear, and that I was working on the company to build an alley to connect with this alley in the rear, and that an alley to Linwood Street would cost considerable money, and that I could get them to build this other alley at their expense, and he said that would be all right; that is the only conversation I ever had with him." This he said he thought was last summer. The deposition was taken in December, 1924, which would place this conversation in the summer of 1924.

He stated that he improved the second piece of property that he had bought from the defendant company by building a wall along the entire front, and a wall on a part of the Pennsylvania side; that he then built a circular drive crossing the two front lots west of his house, and did some grading on the lots; that the paving cost about $1,000, and the improvements cost about $2,000, and that it was now the main entrance to his home. He stated that while these improvements were being made Mr. Richardson never made any complaint in regard thereto, and that he lives on the adjoining property.

It must not be forgotten, however, that there is no proof other than the alleged telephone conversation that Mr. Richardson was ever consulted in regard to these improvements or knew anything about his alleged purchase of the second piece of property from the company, no deed having been exhibited until after this suit was brought. Complainant denies the agreement or understanding alleged to have been effected by the telephone conversation, and his version of the transaction is that as an approach to his property he used the winding road that enters from Linwood Street right near the corner of Pennsylvania Avenue, practically the same route that Mr. Reynolds made the concrete driveway and indicated on the map by the yellow coloring, for any purpose needed from the time he started building up to the time he went to get his winter coal in the fall of 1922, and that after delivering two loads through this street,

Mrs. Reynolds stopped the coal company's driver and forbade him further using it. Complainant said he told Mr. Caldwell, when he complained that he could not deliver any more of his coal, that he had a deed to an alley through that property, and to finish the job, but that he stated he did not care to get into any controversy with Mrs. Reynolds and would wait until the slick hill dried off; that the coal man stopped making his delivery, and the remainder of his coal was delivered by bringing it up the hill against his request. He was asked:

"Q. In the answer of defendants they charge that they had no notice either actual or constructive that you were claiming an alley or outlet to Linwood Street. What are the facts with respect to that? A. So long as I continued to use the street (meaning that portion proximately as indicated in yellow, now claimed as a private driveway) there was no reason for me complaining up to the time that they forbade my coal man, and also forbade my using it. At that time Mrs. Reynolds had attorney Caldwell to take the matter up with me to know what right I had. Prior to this, or about the 1st of November, 1922, they placed a gate across this entrance at Linwood Street, which was the first indication that they did not want me to use it. I threw the gate down three times. It was wired up and had no hinges. After which I wrote Dr. Reynolds a letter telling him that somebody, evidently knowing I had this alley right, had placed an obstruction across the entrance."

This letter was dated November 10, 1922, and is filed as Exhibit "3" to his deposition, and is as follows:

"Bristol, Va.,
"Nov. 10, 1922.

"Dr. H. W. Reynolds,
"Bristol, Tenn.

"Dear Sir:—

"I notice for the last few days there has been a gate wired up across the driveway leading in from Linwood Street to the alley in the rear of my property in such a way that I cannot get in with my car without tearing the gate down. I have been forced to resort to this tearing down act on two occasions and last night I left my car in the front street rather than do this for the third time.

"I am led to believe that this obstruction has been placed across the alley without your knowledge and I hope that you will see that the driveway is kept open or that some way is provided for a more convenient entrance thru from the front street.

Will you please look into the matter and correct it or advise fully.

"Yours truly,
"E. G. Richardson."

To this letter he received the following reply:

"Bristol, Tenn.,
"Nov. 20, 1922.

"Mr. E. G. Richardson,
"City.
"Dear Sir:—

"I am in receipt of your letter of Nov. 10, 1922. My understanding was that I had the option of opening up to your alley in the rear of your lot either from Linwood Street or from Pennsylvania Avenue. I have recently opened up a connection from Pennsylvania Avenue to this alley.

"Yours very truly,
"H. W. Reynolds."

From whom did he receive this understanding? He says that he never had any conversation with the complainant regarding the alley other than the telephone conversation, which, by the way, he places, as before stated, in the summer of 1924, being after this letter, in which he claims it was agreed that complainant would accept this rear entrance from Pennsylvania Avenue in lieu of the Linwood Street entrance, and in which he reported in the conversation he was trying to get the land company to construct at their own expense. Evidently he had taken advice about it, and he had come to the conclusion that the clause in the deed was not binding; but realizing the necessity of some sort of outlet or inlet to the rear of complainant's property, and that he would probably have to provide it, he thought it was optional to provide it at some other place than through to Linwood Street. This, evidently, is how his understanding arose.

About September 20, 1921, Mrs. Reynolds had sought to purchase the lot from complainant, and having made only a small expenditure at that time on the lot complainant offered to sell it to her for $3,000; but she did not accept this offer, and meeting Dr. Reynolds a few days later he was felicitated by him on his estimate of the value of vacant lots in Bristol, and who said at the time that he did not care anything particular about owning the lot, further than that the deed called for an alley, and that he had found he would want more land west of his residence, and would like to get rid of that alley clause in complainant's deed. He was told there if he wanted the lot for $3,000 he could have it, but that it would take that to get it.

Regarding the private driveway and its improvement complainant says:

"At the time I bought there was no driveway there at all, but there was a driveway that had been made by the teams hauling in there. There was no concrete set, and this alley, when the concrete was laid down, was thrown back probably eight or ten feet behind the driveway that had been made by the teams, and which had been used all along. It made direct connection with the corner of my lot until this concrete was put down, which threw it behind it." He was asked:

"Q. Has the Bristol Land & Improvement Company ever opened any alley west of your property leading to Linwood Street? A. Nothing, without it is the alley that she (meaning Mrs. Reynolds) calls her private driveway. I would say that they have. They opened the driveway, but I have been forbidden to use it.

"Q. You know that Dr. and Mrs. Reynolds built the driveway, don't you? A. They supervised it, I do not know who paid for it."

And in relation to this he said further: That the first conversation he had or recalled having with Mrs. Reynolds was in July, a few days before he moved in; that she was having the curbs placed preparatory to laying her concrete driveway; that he told her he wanted to move in several days later, and to not place any concrete or obstruction there that would interfere with his teams getting in; that she stopped her men working and left the road open until he got in; that the alley question was not discussed at that time, and that she finished laying the concrete to within twenty-five or thirty feet of his line, and left it that way for probably eight or ten months; that she then resumed work on it and started further grading; that he went to her and called her attention to the alley provision, and told her that he wanted to call her attention to this so she would not interfere with his entering his property from the driveway, as she was filling in and raising the driveway above the level of his lot; that she then assured him that she had no intention of interfering with his entrance, and that he then told her he had a deed for a fifteen-foot alley leading out to Linwood Street; that she said: "Yes, not an alley, but a roadway through here." That he told her a roadway was all he wanted; that it was called for as an alley in his deed, and he just wanted her to know that that was in there before she proceeded to block him out. He stated that she said: "I assure you, you will not be bottled up, and I will fix it all right so you can get in and out."

As to the purchase of property west of the complainant, and in relation to using the property around the hill denominated on the

map as "Present Driveway," he said: "Dr. Reynolds never discussed the property west of my property at all with me. I do not know when he bought it, or whether he has ever bought it or not, further than the seventy-five feet which is a matter of record. He never discussed the road around the hill with him further than one day he did say he was putting that road around there, and he expected to use it himself, as it was a better grade than the other road. He did not ask me if I would use it, if I could use it, or discuss my using it in any way."

"Q. Did you ever agree to use it? A. I never did, further than I told Dr. Reynolds in one of my letters I had no objection to using it in hauling in coal, or rough hauling, but I did not intend to use it for other purposes.

"Q. They state in their answer that you have used this rear entrance provided for you, and to better advantage than you could use an alley out to Linwood. A. I have never used it a single time. My coal man used it to deliver my coal last fall, but because he could not get in the other way. I told him he could come in over the front way, and he preferred to use it on his own responsibility to keep down trouble with Mrs. Reynolds."

Complainant denied that he ever made any agreement that the alley was never to be opened, or that he ever agreed upon any substituted way, and the weight of the proof sustains him in this denial. Nor does the proof show that any of these improvements were made based upon any supposed agreement to abandon his claim to the alley, but it rather indicates that with full and plenary knowledge of the rights and insistent claim of the complainant, the defendants have progressively pursuaded themselves that he had none that were enforcible, or entitled to respect, and that the growing purposes of Dr. Reynolds, after he became personally interested in the servient lots, and on account of the expenditures he was making to convert this curved driveway that had been used into what he now terms a "private way," led him finally to reject the claim of complainant for an alleyway upon his own risk, rather than upon any assumption that complainant had abandoned his claim, or had estopped himself by agreeing to accept an entrance from Pennsylvania Avenue, and then standing by and silently acquiescing in the expenditure of money in the improvement of his property which he would not otherwise have made.

Defendant Reynolds knew of the provision in the deed and understood that the alley was to be fifteen feet wide, apparently from other alleys the regulation size. He called complainant's attention to his obligation for an increased assumption of liability for Linwood Street improvement by reason of an alley to front thereon, and the

proportionate liability was calculated upon the basis of fifteen feet in width: He bought his own lot adjoining complainant, and he and the company located this alley by the terms of his deed west of his seventy-five foot lot, from the alley to Linwood Street as bounding his lot; and then, notwithstanding what might have been claimed by all interested as to the effect of this deed as a selection and dedication because of previous obligations, he bought from the company at some time (presumably at the date of the deed, which was not acknowledged until after the bringing of this suit) the remainder of this servient estate, including the alley that had been thus previously dedicated. He has so beautified the driveway, which apparently was at all times the most feasible way to get in and out, and is now used as such, ironically running up to the very place where it might be taken, as beautifully serving the convenience of the complainant in getting in and out, but who can only cast covetous eyes upon the inviting prospect, reflecting mournfully, ''so near, and yet so far.''

We do not think that any estoppel arises in this record on these facts. There stands the deed of the defendant company to Dr. Reynolds for the seventy-five-foot with an alley provided for, though of indefinite width, just west of the Doctor's lot, and though it might have required the expenditure of money to make it serviceable by reducing the grade to a scalable minimum, and though a close inspection or survey might have determined, as it subsequently did, that the Doctor's house occupied a portion of this alley, there was no necessity of a minute inspection, and no information that the alley had been or was attempted to be withdrawn by the subsequent unregistered deed, and lulled by the gracious permission to continue to use this curved driveway, and by the assurance, even while taking on its adornments, that while it was not to be regarded as an alley over which the unwashed might be expected to pass, nevertheless its attractive and expensive features were not to be taken as a frowning providence upon the rights of decent, necessary and orderly passage of a neighbor to whom a contract obligation for friendliness existed in this particular.

We think the only questions are, (1) is the stipulation in the deed a valid and enforcible obligation; and, (2) if so, are there any circumstances disclosed by this record that would repel the complainant or make its enforcement unconscionable? A court of conscience cannot be compelled by any rules of law to outrage its conscience in the exercise of any supposed jurisdiction, otherwise it would cease to be a court of conscience. It can refuse its aid in many matters for reasons of which the hard and fast rules of law would take no cognizance. But this is not one of these cases, as might be inferred from the statement of the foregoing facts. The insistence practically narrows down to, and is, that even if there

had been no contract or anything else of an affirmative nature chargable to the complainant as an encouragement from him to the defendant to make these expenditures, that he stood quietly by and saw them make these expenditures, and that he is estopped, under the principle that "if one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent." As sustaining this principle a number of authorities are cited, all of which are good law when confined to the cases made. Among the references in the case of Trimble v. King, 22 L. R. A., 880, a Kentucky case, which quotes the following from an earlier case as being the law:

"There may be an equitable estoppel such as to prevent the real owner from interfering with an easement created by an entry and an expenditure of money by reason of the owner's silence or consent, and where the party entering has no other means of redress. If one stands by and sees another build a house on his land, the latter acting in good faith, and believing that it belongs to him will the real owner be permitted to stand by and see the house erected, and then assert his right for the first time? Equity will prevent him from speaking when, as a conscientious man, he should remain silent." . . . When a man with full knowledge, or, at least, with sufficient notice or means of knowledge, of his right and of all the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly and deliberately permits another to deal with property, or incur expense under the belief that the transaction has been recognized, . . . the transaction, although ordinarily impeachable becomes unimpeachable in equity."

The trouble is not so much with the law cited under this insistence, as with the facts in this particular case being brought into any condition of similarity. There is no such condition of the defendant building a house here in good faith upon property believed to be his own and complainant trying to take it away from him after having seen him erect it, knowing of the mistake and holding his peace. Everything was done that was done by defendant in this case with full knowledge of complainant's rights, if he has any rights as a matter of fact. Complainant is not even seeking to appropriate any part of the house, or exact a too near approach in the construction of the alley as to endanger it, or even to remove it or any portion thereof from the alley formerly dedicated, but asks that his alley might be placed anywhere within the purview of the deed that is feasible and practicable. And it can yet be done, though at some

considerable expense, without damage to anything except perhaps to the appearance, entailing some possible offense to aesthetic tastes. But this should not appeal very strongly as against convenient and necessary access to property sold and paid for, upon a fair consideration without fraud or imposition, the right to which access is evidenced by the same deed that conveyed the property. It is rather ungracious to insist that the one who sold him the property, coming afterwards into possession of the servient estate over which the easement was created, should be allowed to sit snug in the enjoyment not merely of necessary rights incident to the property, but in the felicity of its artistic surroundings, while another should be denied convenient access to property assured him by deed, acquired under a first and paramount claim, and to be used as a home, but rather is to be turned away with the idea that he can be compensated in damages, if entitled to anything, and should be rather than that specific performance be decreed.

Regarding the damages, this case presents the difficulty in estimating in damages the loss of those conveniences necessary to the enjoyment of a home. The complainant thinks that he has suffered inconvenience and damage by reason of the delay in getting the alley laid out, from the date of the deed to the time said alley is opened. He thinks he should have $500, and has assigned as error the refusel of the chancellor to allow such; while the defendants think he is not entitled to any, for the reason that no alley had ever been opened, or attempted to be opened, or could be opened, he says, without the expenditure of a considerable amount of money, and it was claimed that they had done more than was required by opening an outlet to Pennsylvania Avenue.

Without passing upon the reasons assigned as justifying the chancellor at present as to the damages, it does seem that no damages for a denial of a way that was to be laid off in the future could be had until such demand and refusal, and that only up to the time of the bringing of the suit, and for such inconvenience only as had occurred by reason of the delay of the defendant in laying it off and not contributed to by the time necessary to make the way usable in the improvements required; so that the record was really in no shape to present any question of substantial damage upon which the chancellor could safely decree at the time. We therefore think that in the state of the proof the complainant could not have recovered anything more than nominal damages, which only should have been allowed as a vindication of his right to have had the way pointed out and secured to him without resistence, but substantial damages could not have been given at the time by reason of the uncertain character of the proof and the difficulty of placing a value upon the inconveniences suffered and their recurring nature when considered with ref-

erence to the tenure expected in a home. They classify themselves as a loss not easily and satisfactorily compensated for in damages, but rather as a loss to be avoided by a specific performance, where it is not inherently unconscionable so to decree, and where there is no insuperable difficulty in the way.

While it is true that the jurisdiction of a court of equity to decree the specific performance of contracts is not a matter of right in the parties to be demanded ex debito justitiae, and while the discretion is not an arbitrary or capricious one, but a sound judicial discretion regulated by the established principles of equity, yet ''when a contract of which equity has jurisdiction conforms with certain equitable principles, which are quite limited in number, it is as much a matter of course for a court of equity to decree specific performance as for a court of law to give damages for a breach of the contract.'' 36 Ency. Law, page 550, sec. 3; Howard v. Moore, 4 Sneed, 317.

''Where land, or any estate or interest in land is the subject-matter of the agreement, the jurisdiction to enforce specific performance is undisputed and does not depend upon the inadequacy of the legal remedy in the particular case.'' 36 Ency. Law, page 552, Note 1, citing this as a general rule, Buchanan v. Brown, Cooke, 185.

''It is as much a matter of course for courts of equity to decree a specific performance of a contract for a conveyance of real estate which is in its nature unobjectionable as it is for courts of law to give damages for its breach. Equity adopts this principle not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity.'' 36 Ency. Law, page 552.

This easement, being an interest in the land, and purchased as essential to the enjoyment of the lot upon which to build a home, and which goes with it, is especially valuable to the complainant, and he has not estopped himself either to claim it by any action, or by any written alienation of it. It is not therefore within the province of the defendant to substitute something which in his opinion will do as well or better. He has no choice except such as is within the purview of the deed. Nor was it within the power of the court in the state of the pleadings to reform the deed and decree the opening of an alley clearly outside of its provisions and determine that the parties meant something contrary to what they expressed in the deed. So far as the deed is concerned, that the alley was to run somewhere west of the lot, and from the alley in its rear to Linwood Street, so as to reasonably allow access to that lot, and that it was to be fifteen feet wide, there can be no question. The Doctor admits that this was

understood, and as shown it otherwise clearly appears from the proof, if not inferred as a matter of necessity; and the question of objection really simmers down to the statement of the Doctor in reply to the following questions:

"Q. Doctor, you of course do not attempt to deny that you sold Mr. Richardson an alley from the rear out to Linwood Street, do you? A. No, sir, I do not.

"Q. What, then, is the reason for avoiding this part of the contract? A. Well, I testified that it was impracticable to do so, and it would not do his property or my property any good, and this alley as run from Pennsylvania Avenue would be of greater advantage to all the property.

"Q. Is your opinion based on the expense to Mr. Richardson for opening such an alley? A. No, sir."

These answers, if it were not otherwise done, eliminate any question of estoppel, as they afford from him a statement of the real reasons for not opening the alley. When examined they are found insufficient. In the first place, it is not impracticable. Indeed the private driveway has already been established, would well and sufficiently answer all purposes of an alley, and if it were called not an alley but a right-of-way, and not used for rough haulage, and made to serve only the one lot of complainant, it might not be so objectionable; and this would be a way to solve the difficulty through amicable adjustment. But if not, the line for an alley called the west line, indicated on the map heretofore referred to in green coloring, is or can be made practicable, though Mr. Spaulding thinks the expense would be too great. It could be built with walls, and the steepest grade would be nine feet if run on a straight grade from Linwood Street to the alley; but it would be practical to terrace both the alley and the land on either side, thus lessening the height of the walls and the depth of the cut, and a serviceable alley be obtained. But he thinks this would detract from the value of the lots. Even so, any easement imposed might so detract, but these were matters for the consideration of the Doctor when he purchased his lots, as he did so with notice of their possible servitude; and while he does not consider the question of a front entrance a matter of much concern to the complainant, it nevertheless appears with certainty that he attached value to such a front entrance, and went to great expense in improving the curved driveway for his private use, and which he now seeks to reserve exclusively to himself, and wants the complainant to content himself with a long detour. The question of expense is largely for the equitable distribution of the court under the circumstances, and as it is not conceived to be out of proportion to the uses it will serve as making available conveniences purchased, it does not come with good grace from the

Doctor to say that it will not do complainant's property any good. It can readily be seen that it will do his property good. This access is much more to be desired than the long detour that must be otherwise resorted to, and when considered as a continuing inconvenience, the value of a front, and shorter and more direct entrance is magnified. Such a loss cannot be adequately compensated for in damages.

The question remains, therefore, as to whether the Doctor is to be suffered to remain in the undisturbed and solitary enjoyment of the aesthetic situation with which, with full knowledge of the other fellow's rights and in apparent disregard thereof, he has surrounded himself, or whether his estate shall suffer some inconveniences and some possible disfigurement in order that the complainant's property be invested with the conveniences equally desirable to him, and that were bought and paid for, and which he has in nowise forfeited by any conduct shown in the record. We do not think there can be any doubt that the equities are with the complainant.

Is the stipulation in complainant's deed for an alley a valid, enforcible contract? We think the description sufficiently definite. The only point left open was as to the exact point the alley would intersect running west of Mr. Richardson's lot, with the alley in the rear of complainant's property and Linwood Street, its front, and the course the alley should take in connecting these two entrances. These matters were left open to the reasonable selection of the defendant company, and we may add to the owner of the property now charged with this servitude, the defendant H. W. Reynolds, this to be influenced by the understanding and purposes of the alley to serve the reasonable and practicable conveniences of complainant's lot, having regard also for the reasonable burden to be laid upon the servient estate. This much under the contract the defendant had the right to select, but he has no right under the stipulation to place the alley beyond that latitude, as erroneously supposed and decreed by the court. Within the latitude of the deed the selection would be the same as that of a way by necessity.

> "If one has a right to an easement in the lands of another, for a private way, and such way is to be located for the first time, no prior use thereof having been made, the owner of the land over which it is to pass has the right to choose it, provided he does so in a reasonable manner; but if he fails to do so, the person entitled to the way may select a suitable route for it, having due regard to the convenience of the landowner. The route should be determined not by the sole interest of either the way owner or the landowner, but by the reasonable convenience of both. If the parties cannot agree, equity may step in and fix the route. And when once selected, it cannot be changed

by either party without consent of the other. The owners of the two estates may agree by parol as to the location of the way and such agreement is binding. If a right of way is decreed over the lands of another, it is not necessary for the parties expressly to designate its location, but it is sufficient if a right-of-way is used and acquiesced in. The use fixes the location." 21 R. C. L., page 1241.

To the same effect is the case of McMillan, et al. v. McKee, et al., 129 Tenn., 39; Pearn v. Coal Creek M. & M. Co., 90 Tenn., 619.

The criticism of the deed stipulation in the brief of appellees is that it is void, because it does not state where to begin; or, to quote his own words:

"As authority for appellees' contention that the clause in the deed is so uncertain that an engineer could not, following the deed alone and exercising no discretion, lay out the alley at any fixed point."

The answer to this is that the stipulation is executory and did not contemplate the exact location of the alley. Had the description been as exact as insisted by appellees to be necessary to its validity, it would have itself located the alley, and it could not have been located at any other point. But it did not make it void because this point was left open, nor render it so uncertain as to not be available. The right existed in the vendors reasonably to make the selection of the points of intersection, if they cared to exercise it, if not in the vendee, controlled by considerations of reasonableness, and in any event under the directions of the court the points of intersection can be located, and that is always certain that can be made certain within the purview of the contract. The case of Dobson v. Litton, 5 Cold., 616, is not in point. There the description in the deed contained no certain reference by which the nine acres and sixty-six poles could be certainly described. In other words, any nine acres and sixty-six poles might have been carved out and have been near the junction of Broadway Street, Nashville, and the Hillsboro Pike, Davidson county, Tennessee, and there was nothing else in the writing to determine which was meant, and there was no legal way by which it could be determined. This patent ambiguity rendered the contract void upon its face, and unenforcible in any form. The distinction is obvious. There is no fatal infirmity about the provision in the complainant's deed securing the alley.

It results, therefore, that the assignments of error are sustained. The decree of the chancellor is reversed, and the cause remanded for the location and establishment of an alleyway under the orders of the chancellor in accordance with the provisions contained in the complainant's deed, and in accordance with this opinion.

The defendant company and Dr. H. W. Reynolds will pay the costs of the cause up to the present time. Any further costs accruing will be adjudged by the chancellor.

Portrum and Thompson, JJ., concur.