**Ronnie HILL and John Taylor, Plaintiffs-Appellees,**

v.

**U.S. LIFE TITLE INSURANCE COMPANY OF NEW YORK, Defendant-Third-Party Plaintiff-Appellant,**

v.

**John Clarence LEONARD, Third-Party Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 11, 1986.

Affirmed by the Supreme Court April 27, 1987.

Barry B. White, Lewisburg, for plaintiffs-appellees.

Fred E. Cowden, Jr., Nashville, for defendant-third-party plaintiff-appellant.

John C. Leonard, Jr., Lewisburg, for third-party defendant-appellee.

## OPINION

LEWIS, Judge.

This is an appeal by defendant, U.S. Life Title Insurance Company of New York (U.S. Life), from a judgment awarding plaintiffs Ronnie Hill and John Taylor the sum of $25,000 as damages and dismissing U.S. Life's third-party complaint against Dr. John Clarence Leonard (Leonard) in which U.S. Life had asked that the easement in question be declared abandoned and removed from the record as a cloud upon plaintiffs' title.

The pertinent facts are as follows:

On April 3, 1980, plaintiffs purchased a 676.94 acre farm in Marshall County, Tennessee, from John D. Lambert, executor of the estate of Pauline D. Lambert. On April 11, 1980, U.S. Life issued its "Policy of Title Insurance" insuring plaintiffs

against loss or damage, costs, attorneys' fees and expense sustained or incurred by the insured by reason of:

1. Title to the estate or interest [in the 676.94 acre tract] being vested otherwise than as stated therein;

2. Any defect in or lien or encumbrance on such title;

3. Lack of a right of access to and from the land; or

4. Unmarketability of such title.

Schedule B of the policy provides in part:

This policy does not insure against loss or damage by reason of the following:

. . . .

3. Easements or claims of easements not shown by the public records.

The policy defines public records as "those records which by law impart con-

**912**

structive notice of matters relating to said land."

Subsequent to the issuance of the policy, plaintiffs discovered a document dated September 1, 1944, of record in Deed Book C–4, page 149, Register's Office of Marshall County, Tennessee, purporting to grant an easement across the 676.94 acre farm, which was not listed as an exception in the title policy.

■ U.S. Life, by its first issue, contends that its policy does not cover the easement because

> a right-of-way easement which contains no legal description of the property, gives no indication as to the civil district in which the property is located, does not indicate the county in which the property is located, and contains no point of reference within the four corners of the document from which a description could be prepared[,]

is not shown by the public records even though it may be recorded and is therefore not "binding upon anyone other than the parties to the agreement, without the showing of actual notice."[1]

The easement contained in Deed Book C–4 is as follows:

> Whereas, we have a good neighbor in the person of Mr. Ed Walker, whom we consider a christian gentleman in every respect, and
>
> WHEREAS, he has a good farm that lays back of our farm and is very badly hemmed in, Now in order to give him a good way to get in and out to his farm with cars or trucks, we, W.D. Fox and wife, Eva Fox, are hereby deeding him this right of way for the consideration that he make the road at his own expense, and with the further understanding that the owner of the Walker farm is to keep three good gates or stock gaps on this road, and keep them in such a way as to keep the stock in or out, and if the parties who own the Walker place

> fails to keep good gates or stock gaps on this road, they are to pay what it costs to keep them in good shape.
>
> This September 1, 1944.

Generally, in order that there be constructive notice of an easement, the recorded instrument must sufficiently identify the premises. 66 Am.Jur.2d *Records and Recording Laws* § 143 (1973).

This Court in *Sheffield v. Franklin*, 32 Tenn.App. 532, 543–544, 222 S.W.2d 974, 978–979 (1947), stated as follows:

> Certainly it is true that a deed to be valid must designate the land intended to be conveyed with reasonable certainty. But with respect to executed contracts conveying real property, the courts have been extremely liberal in construing the description with a view of determining whether it is sufficiently definite and certain to identify the land and make the instrument operative as a conveyance, and it is said to be a broad general principle "that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed." "It is sufficient", continues this text, "if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located."
>
> The test is whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries.
>
> Though parol evidence cannot be resorted to to supply material parts of a deed, it is always admissible to show where the land is that fills the description contained in the instrument. It is permissible to apply, but not to supply, description. And it is very generally held that "parol evidence is permissible to locate natural monuments, such as trees, paths, fords, etc., called for in the deed."

(Citations omitted.)

*See also Miller v. Street,* 663 S.W.2d 797, 798 (Tenn.App.1983), where this Court reit-

---

1. There is no contention that the plaintiffs had actual notice of the easement.

erated "the test of adequacy of description is whether a surveyor, from the description, could locate the property."

Neither *Sheffield* nor *Miller* contained full descriptions. However, there was enough contained in the instruments so that a surveyor could locate the easement.

U.S. Life contends that there can be no constructive notice in the instant case that the right-of-way encumbered plaintiffs' land since the "agreement in question gives no indication as to what property it encumbers, other than the fact that it was property owned by W.D. Fox and wife." It argues that the record shows that the Foxes had conveyed numerous tracts of land during the time period in question.

The Chancellor found that

the document was acknowledged and recorded in Marshall County. It should be pointed out that Marshall County was a small rural county in 1944 and still is. It wouldn't have been difficult for the defendant to check out conveyances of W.D. Fox, et ux., the grantors of the easement. The said grantors were a second predecessor in title to the plaintiffs. Had the defendant checked out conveyances as aforesaid, it would have found that an executory easement for a right of way had been conveyed and that further investigation was necessary. The court is of the opinion that the recorded document imparts constructive notice of *matters relating to the land.*

We are of the opinion that there is evidence in this record to support the Chancellor's finding.

The instrument in question shows that it was notarized in Marshall County, Tennessee, and recorded in Marshall County, Tennessee. The instrument shows that W.D. Fox and wife, Eva, are the grantors and that Ed Walker is the grantee. The instrument explicitly states that Mr. Walker "has a farm that lays back of our farm and he is very badly hemmed in...." The instrument further shows that it is the intention of the parties that a right of way run with

the land. At the time of conveyance W.D. Fox and wife owned property adjacent to Ed Walker in Marshall County, Tennessee.

The easement here is an executory easement. It grants to the grantee a right of way to be built and maintained by him and his successors in ownership.

"If one has a right to an easement in the lands of another, for a private way, and such way is to be located for the first time, no prior use thereof having been made, the owner of the land over which it is to pass has the right to choose it, provided he does so in a reasonable manner; but if he fails to do so, the person entitled to the way may select a suitable route for it, having due regard to the convenience of the landowner. The route should be determined not by the sole interest of either the way owner or the landowner, but by the reasonable convenience of both. If the parties cannot agree, equity may step in and fix the route. And when once selected, it cannot be changed by either party without consent of the other. The owners of the two estates may agree by parol as to the location of the way and such agreement is binding. If a right of way is decreed over the lands of another, it is not necessary for the parties expressly to designate its location, but it is sufficient if a right-of-way is used and acquiesced in. The use fixes the location." 21 R.C.L., page 1241.

*Richardson v. Bristol Land & Improvement Co.,* 1 Tenn.App. 671, 689–690 (1926).

The evidence shows that it is undisputed that the right of way was built and that the location was well known. Numerous witnesses were able to point out on maps and describe the right of way from Fox to Walker.

This issue is without merit.

U.S. Life, by its next issue, contends "there was [no] competent evidence to sustain the trial judge's determination that the right-of-way easement reduced the value of plaintiffs' property by $25,000" and that

914

the court erred in allowing "an unexercised option agreement" to be considered in determining the effect of the subject easement on the value of plaintiffs' property.

U.S. Life argues that "the Plaintiffs have attempted to fix the amount of their damages by contract and thereafter bootstrapped the amount set forth in the contract as the dimunition in value of the property as caused by the alleged right-of-way easement."

It is U.S. Life's insistence that it was error to allow into evidence the option to purchase granted by the plaintiffs to Leon Foster and J.B. Burton which provided that the purchase price of the property would be $485,000 but would be reduced by $25,000 if the easement in favor of Dr. Leonard encumbered the property.

At the time of trial the option to purchase had not been exercised. While it was probably error to allow evidence of the option to purchase into evidence, this error was harmless since there is evidence in the record to support the Chancellor's award of damages. A final judgment will not be set aside for harmless error. Tenn.R.App.P. 36(b).

■ A landowner may testify regarding the amount of damages caused by an easement on his land when he gives a basis for his opinion. *State ex rel. Pack v. Castle,* 604 S.W.2d 50 (Tenn.1980).

■ Here, plaintiff Ronnie Hill testified that the easement "splits off a back portion of the property that would be next to the river, which could be all in one field," that the easement interfered with irrigation, and that the land upon which the easement is located could not be used for "row cropping." He thereafter testified that, in his opinion, the value of the land without the easement was $485,000 and the value of the land with the easement was $460,000.

U.S. Life also argues that if damages were to be awarded, it should have been on the basis of the testimony of their expert, Ed Green. He testified that the existence of the easement lessened the value of the property by the sum of $2400.

■ Here, the plaintiffs offered no "real estate expert" regarding damage to the property. However, the trier of fact is not called upon to disregard the plaintiffs' proof of damages simply because an expert did not testify on their behalf and an expert did testify on behalf of U.S. Life.

Qualifications of witnesses simply go to the weight of their testimony. Credibility of witnesses and the weight to be given their testimony is for the trier of fact to pass upon. *State v. Chumbley,* 27 Tenn. App. 377, 385, 181 S.W.2d 382, 385 (1944).

There is evidence to support the Chancellor's award of damages in the sum of $25,000. This issue is without merit.

Lastly, U.S. Life argues that the easement was a way of necessity established because Ed Walker's farm was landlocked and that when Dr. Leonard purchased the Walker farm the way of necessity ceased because Dr. Leonard owned the farm adjoining the Walker tract and "had a means of ingress and egress utilized by himself, his employees and tenants, different from the right-of-way granted by Fox to Walker." U.S. Life insists that the only time the right of way is presently used is "when the Duck River floods."

The record shows that the easement has been used by Tommy Leonard at times other than when the Duck River floods. There is also evidence that Dr. Leonard's tenants have used the easement when they were working the tobacco crop.

Dr. Leonard testified that he owned the Mays property, which adjoins the Walker tract, prior to purchasing the Walker tract and that one of the reasons for the purchase was to provide him with a means of ingress and egress during "high water times."

■ A full reading of the record shows that if the easement granted by Fox to Walker is only a way of necessity, the necessity has not ceased. Further, there is

no evidence that the easement has been abandoned or ceased being used. Non-use has not been shown and, in any event, the mere non-use, however long continued, is not sufficient evidence of abandonment of an easement created by an express grant.

Dr. Leonard argues that this is an appurtenant easement. However, we are of the opinion that it is not necessary that we determine whether the easement is appurtenant.

This issue is without merit.

The judgment of the Chancellor is affirmed with costs assessed against U.S. Life and the cause remanded to the Chancery Court for the collection of costs, the enforcement of its judgment, and any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.